UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CON-WAY INC., | No. 08-4263 SC |
|     Plaintiff, | |
|    v. | DEFAULT JUDGMENT |
| CONWAYRACING.COM, | |
|     Defendant. | |

## I. INTRODUCTION

Plaintiff Con-Way Inc. ("Plaintiff") has initiated this in rem action for cybersquatting pursuant to 15 U.S.C. § 1125(d)(2) against the domain name CONWAYRACING.COM (the "Domain"). Compl., Docket No. 1. Plaintiff now requests that this Court enter default judgment against the Domain. Docket No. 23 ("Motion"). For the reason stated below, the Court hereby GRANTS Plaintiff's request.

## II. BACKGROUND

Plaintiff provides supply chain and logistical services to a wide range of businesses worldwide. Compl. ¶ 9. It also sponsors the Con-Way Racing team in the NASCAR Craftsman Truck Series, and is the owner of the CON-WAY.COM domain name. Id.

¶¶ 11-12. Plaintiff owns numerous trademark registrations that include or are derived from "CON-WAY," including the service mark of "CON-WAY," for use in "supply chain, logistics, and reverse logistics services . . . ." Id. ¶ 10, Ex. B ("Registration No. 2,735,892").

Plaintiff alleges that the domain CONWAYRACING.COM is a website that serves as a "search directory that provides links to companies that provide goods and services associated with racing, including NASCAR racing." Id. ¶ 13. The registry for the Domain is Verisign, Inc., which is located in Mountain View, California, and the registrar is Moniker Online Services, LLC. Id. ¶ 2-3, 7. According to the registrar, the registrant of the Domain is Domain Park Limited ("DPL"), which has listed itself at a number of international addresses during the last few years, including Apia, Samoa and Berlin, Germany. Id. ¶¶ 14, 16. When Plaintiff attempted to contact DPL via the e-mail address that DPL provided to the Domain's registrar, an individual named "David" responded with an offer to transfer the site for a fee of $250 "to cover my registration and administrative fees." Compl Ex. F ("David Reply"). DPL has made no appearance in this suit, in spite of having received actual notice. See Aff. of Service, Docket No. 7. Plaintiff contends that the Domain infringes upon its trademark and violates the Anticybersquatting Consumer Protection Act of 1999 ("ACPA"), as amended, 15 U.S.C. § 1125(d) ("§ 1125(d)"), and that the Domain has the effect and intent of confusing the public and Plaintiff's customers, and of diluting Plaintiff's mark. Id. ¶¶ 22-23.

2

### III. <u>LEGAL STANDARD</u>

Section 1125(d)(2) sets out the procedures for bringing an in rem action against a domain name under the ACPA. To bring such an action, a plaintiff must prove, and the court must find, that the owner is not able to obtain in personam jurisdiction over the person who should be the defendant in an in personam ACPA action, as defined by § 1125(d)(1) (in this case, the registrant). See 15 U.S.C. § 1125(d)(2)(A)(i)-(ii)(I). Alternatively, the Court may find that the mark owner "through due diligence was not able to find a person who would have been a defendant in a civil action" by sending a notice to the registrant at the postal and e-mail addresses of the registrant, as provided by the registrant to the registrar, and by "publishing notice of the action as the court may direct . . . ." Id. § 1125(d)(2)(A)(ii)(II).

Service of process can be accomplished in an in rem action under the ACPA if the court finds that there is no in personam jurisdiction and the plaintiff undertakes the notice requirements of subparagraph 1125(d)(2)(A)(ii)(II). Id. § 1125(d)(2)(B).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "[w]hen entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." Tuli v. Republic of Iraq, 172 F.3d 707, 712 (9th Cir. 1999). Therefore, for the purposes of this Motion, the Court

3

1 accepts as true the facts as alleged in the Complaint, and will
2 scrutinize evidence and allegations that address jurisdiction over
3 the defendant.

## IV. DISCUSSION

### A. Proper In Rem Jurisdiction

By an earlier motion, Plaintiff requested that this Court find that it could not obtain in personam jurisdiction over a proper ACPA defendant, and this Court found that in personam jurisdiction was indeed lacking. Docket Nos. 17 ("Jurisdiction Motion"), 18 ("Order"). Plaintiff provided evidence that the registrant of the Domain was DPL, and DPL is therefore the entity that would be the defendant if the suit were to proceed in personam under 15 U.S.C. § 1125(d)(1). See Compl. Ex. A ("WHOIS Info"). Plaintiff attempted, on multiple occasions, to contact DPL at the e-mail and postal addresses listed by the registrar, and Plaintiff received no response from the postal communications. Compl. Ex. D ("Letter to DPL"); Compl. Ex. E ("E-Mail to DPL"); Aff. of Service. As Plaintiff noted, DPL's listed address changed during the course of Plaintiff's pursuit of DPL, moving from Apia, Somoa (as of April 30, 2008) to Berlin, German (as of July 28, 2008), where DPL was listed by the time that Plaintiff attempted to mail and e-mail DPL service of process. Aff. of Service. During its attempts to reach DPL, Plaintiff was unable to discover any additional evidence of record that would suggest that DPL had contacts that might give rise to in personam jurisdiction. Jurisdiction Motion at 2.

4

1     The website itself does not provide any basis for
2 jurisdiction.  Plaintiff has represented to the Court that the
3 Domain is merely a "search directory that provides links to
4 companies that provide goods and services associated with racing,
5 including NASCAR racing," and has provided printouts from the web
6 pages of the Domain.  Id. ¶ 13; see also Compl. Ex. C ("Web
7 Page").  A passive website that merely provides links to other
8 sites, but does not itself sell products within a forum, is
9 insufficient to confer jurisdiction.  See, e.g., Simplicity, Inc.
10 v. MTS Prods., 2006 U.S. Dist. LEXIS 17626, *23-25 (E.D. Pa. Apr.
11 14, 2006) ("[The] website falls short of a commercially
12 interactive site for which personal jurisdiction is proper because
13 it does not allow customers to purchase products online -- it
14 merely provides the names and website links to retailers, etailers
15 and specialty stores which sell its products.").  Based on this
16 record, this Court has found that in personam jurisdiction against
17 DPL is lacking and Plaintiff can proceed against the Domain in
18 rem, pursuant to § 1125(d)(2)(A)(ii)(I).  Order at 3.

19     **B.   Service of Process**

20     Plaintiff must also establish that service of process was
21 proper.  Plaintiff is not claiming to have successfully completed
22 service under the Federal Rules of Civil Procedure, but is instead
23 relying on subparagraph 1125(d)(2)(B), which provides that "[t]he
24 actions under subparagraph (A)(ii) shall constitute service of
25 process."  15 U.S.C. § 1125(d)(2)(B).  Courts have typically read
26 this broad reference to subparagraph (A)(ii) to require both a
27 finding that in personam jurisdiction is lacking, and that the
28
                                    5

1 plaintiff made use of the notice methods listed in subparagraphs
2 (A)(ii)(II)(aa)-(bb), i.e., sending notice of the alleged
3 violation to the postal and e-mail address of the registrant, and
4 publishing notice "as the court may direct." See, e.g., Shri Ram
5 Chandra Mission v. Sahajmarg, 139 F. Supp. 2d 721, 723 (D. Va.
6 2001). Plaintiff has notified DPL of the alleged violation on at
7 least two separate occasions (and at least two postal addresses),
8 and has used both postal and electronic mail on each occasion.
9 See Letter to DPL; E-Mail to DPL; Aff. of Service. Plaintiff
10 therefore meets the requirement of subparagraph (A)(ii)(II)(aa).
11 Although Plaintiff has not submitted evidence that it has
12 published notice, as set out in subparagraph (A)(ii)(II)(bb), the
13 statute only calls for publication as district courts "may"
14 direct, and courts sometimes waive this requirement where the
15 registrant has had actual notice of the suit. See, e.g., Banco
16 Inverlat, S.A. v. www.Inverlat.com, 112 F. Supp. 2d 521, 524 (E.D.
17 Va. 2000). Here, DPL has clearly received notice of the alleged
18 infringement and Plaintiff's intent to bring suit, as evidenced by
19 its offer to transfer the Domain to Plaintiff for a fee of $250.
20 See David Reply. Under these circumstances, publication would be
21 wasteful and unnecessary, and the Court finds that Plaintiff has
22 successfully completed service of process under subparagraph
23 1125(d)(2)(B).

24 **C. Whether the Domain Violates Plaintiff's Rights**

25 A plaintiff may establish that a domain violates its
26 trademark rights by showing that the registrant (or its authorized
27 licensee) "(i) has a bad faith intent to profit from that mark . .

6


1  . ; and (ii) registers, traffics in, or uses a domain name that .
2  . . is identical or confusingly similar to or dilutive of that
3  mark . . . ."  15 U.S.C. § 1125(d)(1)(A).  The Court finds that
4  the Domain violates Plaintiff's rights under the ACPA.

5   The domain name, "CONWAYRACING.COM," is confusingly similar
6  to Plaintiff's mark, "CON-WAY."  Plaintiff claims that "CON-WAY"
7  is a strong and famous mark, the mark is associated with the
8  sponsorship of racing activities, and the name "CONWAYRACING.COM"
9  is similar to, and apparently derived from, Plaintiff's mark.
10 Compl. ¶¶ 22-24; see Brookfield Communs. v. W. Coast Entm't Corp.,
11 174 F.3d 1036, 1053-54 (9th Cir 1999) (listing factors to consider
12 when determining likelihood of confusion, including "similarity of
13 the conflicting designations; relatedness or proximity of the two
14 companies' products or services; strength of [plaintiff]'s mark;
15 marketing channels used; . . .").

16  DPL registered and used this domain name.  See WHOIS Info;
17 Web Page.  It did so in bad faith, as evidenced by its attempt to
18 transfer the domain name back to Plaintiff for a fee, after
19 Plaintiff notified DPL of the infringement.  See David Reply; see
20 also 15 U.S.C. § 1125(d)(1)(B)(VI) (allowing courts to consider,
21 in determining bad faith, an "offer to transfer, sell, or
22 otherwise assign the domain name to the mark owner or any third
23 party for financial gain without having used, or having an intent
24 to use, the domain name in the bona fide offering of any goods or
25 services.").  The fact that the domain name overlaps with
26 Plaintiff's mark and activities also evidences an "intent to
27 divert consumers from the mark owner's online location to a site

United States District Court
For the Northern District of California

accessible under the domain name that could harm the goodwill represented by the mark . . . for commercial gain . . . by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site."  Id. § 1125(d)(1)(B)(V). This is sufficient for a finding of bad faith.  Plaintiff has met its burdens under the ACPA.

## V.  CONCLUSION

This Court hereby GRANTS Plaintiff default judgment and ORDERS as follows:

1) Default judgment is entered against the CONWAYRACING.COM domain name;

2) Moniker Online Services, LLC, domain name registrar for the CONWAYRACING.COM domain name, shall transfer and register the CONWAYRACING.COM domain name to Plaintiff; and

3) VeriSign, Inc., the domain name registry for the CONWAYRACING.COM domain name, shall change the registrar of record for the CONWAYRACING.COM domain name from the current registrar to Network Solutions, LLC, who will subsequently transfer ownership of and register the CONWAYRACING.COM domain name to Plaintiff.

IT IS SO ORDERED, ADJUDGED AND DECREED.

Dated: July 28, 2009

_____
UNITED STATES DISTRICT JUDGE